UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DEJESUS VASQUEZ,<br><br>Plaintiff,<br><br>v.<br><br>TULARE COUNTY, et al.,<br><br>Defendants. | No.  1:25-cv-01581-SAB (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 7) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

**I.**

**BACKGROUND**

Plaintiff filed the instant action on November 18, 2025.  (ECV No. 1.)

On December 3, 2025, the Court screened Plaintiff complaint, found no cognizable claims, and granted Plaintiff the opportunity to amend the complaint.  (ECF No. 5.)  Plaintiff failed to file an amended complaint or otherwise communicated with the Court.  Therefore, on January 12, 2026, the Court ordered Plaintiff to show why the action should not be dismissed.  Plaintiff has failed to respond to the order to show cause and the time to do so has passed.  Thus, the operative complaint before the Court is the initial complaint, which as explained below, fails to state a cognizable claim for relief and dismissal of the action is warranted.

1

# I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

# II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff was arrested on December 17, 2000, and housed in the general population

without any issues regarding his custodial status.

On October 3, 2024, after nearly four years of incarceration, Plaintiff was transferred to administrative segregation without any reason given other than the move was conducted for "safety reasons."

Plaintiff filed multiple grievances regarding the change of custody status and was never given any explanations or reasons why he was transferred.  Plaintiff repeatedly requested to be taken off administrative segregation status.  While in administrative segregation, Plaintiff was usually shackled with both hands and feet in restraints prior to leave his cell and was escorted by two officers during any type of movement.

On December 3, 2024, Plaintiff was frustrated with his custody status and had a verbal argument with Defendant Nunez over the intercom in Plaintiff's cell.  A short while later, while Defendant Nunez was working in the control tower, she contacted Plaintiff over the intercom and told him to get ready for yard.  A few minutes thereafter, Plaintiff's cell door opened by the control tower without any officers being in the building.  Plaintiff also heard other doors opening and believed that he had been taken off administrative segregation status and would now program with the general population.

Plaintiff is a registered gang member and there were other Hispanics who had come out of their cells, but Plaintiff did not know them.  He was aware that there were rival gang members in the unit, but had no way to tell whether or not the other inmates released were rivals.  However, because of the safety precautions put into place in that unit, Plaintiff expected those inmates to be the same classification as Plaintiff was, so he did not expect any problems.  Approximately one minute after the cell door opened, Plaintiff learned that the other inmates who were released at the same time as him were not the same classification as him, as he was attacked by three members of a rival gang.  Plaintiff suffered approximately seventeen stab wounds during the attack and was transported to the hospital to be treated for multiple injuries, including stab wounds, collapsed lung, laceration on his liver, blurred vision, lacerations to face and body, and severe pain in his head, back, and neck.

After three days of hospitalization, Plaintiff was discharged and transported back to the

administrative segregation unit.  Approximately one month later, on December 27, 2024, Plaintiff's custodial status was returned to general population and he was rehoused in his original unit without any explanation as to why the status was changed.  Plaintiff filed an additional grievance regarding the incident and sergeant Johnson stated that Plaintiff was at fault because his door was open for approximately one minutes before the attacked occurred and he should have shut his door.  These types of temporary changes in classification are common at this facility and there have been six other inmates who have been attacked after having their custody status changed.  The only reason given for his change of status was the jail gang task force reviews inmates files and has to jointly approve a change in classification and inmates are not entitled to an explanation.  The members of the gang task force are lieutenant Neves, sergeant Celaya, and deputy Lares.

Since that time, Plaintiff has suffered from both physical and emotional ailments, such as anxiety, post-traumatic stress disorder, loss of appetite, depression, loss of sleep, neck and body pains, blurred vision, and shortness of breath.

Neves, Celaya, and Lares are responsible due to the fact that they randomly changed Plaintiff's classification and housed him in a unit with rival gang members.

Defendant Nunez is responsible due to the fact that she ignored Plaintiff's safety protocols which should have been in place when opening his cell door at the same time as rival gang members.

Sheriff Mike Boudreaux is responsible for failing to properly train custodial staff and allowed this incident to occur.

The County of Tulare is responsible due to the fact that randomly reclassifying inmates on a temporary basis and placing them at risk, as well as the many attacks which have happened after an inmate was reclassified under similar circumstances is a common occurrence which happens frequently enough to be considered at least an unofficial policy or custom.

4

## III.

## DISCUSSION

### A.    Failure to Protect

"A pre-trial detainee bringing a Fourteenth Amendment conditions of confinement claim must show that the conditions under which that detainee was confined 'put [him] at substantial risk of suffering serious harm.' " Smith v. Washington, 781 F. App'x 595, 597 (9th Cir. 2019) (quoting Castro v. County of Los Angeles, 833 F.3d at 1060, 1071 (9th Cir. 2016))).  Pretrial detainee conditions-of-confinement claims are analyzed using a standard of "objective deliberate indifference." Gordon v. County of Orange, 888 F.3d at 1118, 1124 (9th Cir. 2018).

A pretrial detainee must therefore show that: (1) a particular defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined, (2) those conditions put him at substantial risk of suffering serious harm, (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in similar circumstances would have appreciated the high degree of risk - making the consequences of the defendant's conduct obvious, and (4) by not taking such measures, the defendant caused the detainee's injuries. Gordon, 888 F.3d at 1125; see also Castro, 833 F.3d at 1071.  The Ninth Circuit held in Castro that under the Fourteenth Amendment, failure-to-protect claims, such as prison officials' failure to protect an inmate from violence at the hands of other inmates, brought by pretrial detainees are analyzed under the above discussed objective deliberative indifference standard. Castro, 833 F.3d at 1069, 1071.

Here, Plaintiff fails to plausibly allege that any Defendant made an intentional decision to place him under conditions of substantial risk of suffering harm or that any Defendant had reason to know or should have known that releasing Plaintiff with the other inmates would pose a substantial risk.  Although Plaintiff contends that Defendant Nunez intentionally opened his cell door at the same time as rival gang members, there are no facts from which a plausible inference can be drawn that Nunez knew or should have known that releasing the inmates would place Plaintiff at a substantial risk of suffering serious harm. Plaintiff does not allege any facts to support that Nunez  knew or should have known that Plaintiff was at risk of being attacked by

rival gang members.  In addition, Plaintiff merely alleges that Defendants Neves, Celaya, and Lares are responsible due to the fact that they randomly changed Plaintiff's classification and housed him in a unit with rival gang members.  However, there are no facts from which a plausible inference can be drawn that any of these Defendants knew or should have known of a substantial risk of harm to Plaintiff.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

### B.    Tulare County as Defendant

"[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." Jessen v. Cnty. of Fresno, 808 F. App'x 432, 434–35 (9th Cir. 2020) (citing Horton by Horton v. City of Santa Maria, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  To prevail on a Monell claim against the Fresno County Sheriff Department based on a failure to train theory, Plaintiff "must demonstrate that a municipality's failure to train amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." Perez v. City of Fresno, 98 F.4th 919, 931 (9th Cir. 2024) (cleaned up). In this context, deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 563 U.S. 51, 61 (2011). Generally, "a pattern of similar constitutional violations, rather than proof of a single incident, is necessary to demonstrate deliberate indifference." Perez, 98 F.4th at 931 (cleaned up). However, "single-incident liability may exist in the rare case where 'the unconstitutional consequences of failing to train' are "patently obvious.' " Id. (quoting Connick, 563 U.S. 51, 63-64).

Plaintiff's complaint fails to plausibly state a claim against the County of Tulare.  The complaint merely asserts in a conclusory manner that the Tulare County is responsible for randomly reclassifying inmates on a temporary basis and placing them at risk, which is a common occurrence that happens frequently enough to be considered at least an unofficial policy or custom.

Besides describing the details of the incident in this case, Plaintiff has not alleged any fact

concerning the County's classification of inmates.  "A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom." Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)); accord Saved Mag. v. Spokane Police Dep't, 19 F.4th 1193, 1201 (9th Cir. 2021); Benavidez v. Cnty. of San Diego, 993 F.3d 1134, 1154 (9th Cir. 2021).  Thus, Plaintiff's bald and conclusory statement without any factual specificity is not entitled to the presumption of truth. Iqbal, at 678.

### C.      Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676-77; see, e.g., Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), overruled on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

An individual supervisory defendant can be liable for failure to train under the Eighth Amendment when, "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor] ... can reasonably be said to have been deliberately indifferent to the need." Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)). The facts must allege that the failure to train was the result of " 'a "deliberate" or "conscious" choice' to 'follow a course of action ... from among various alternatives[.]' " Clement, 298 F.3d at 905 (quoting City of Canton, 489 U.S. at 389); see also White v. Golden State Eye Center, 2009 WL 817937, *6 (E.D. Cal. 2009) (identifying elements of a claim for failure to train).  Finally, the supervisor's failure to train must result in the violation of the plaintiff's constitutional rights to impose liability on the supervisor. Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984).

7

Plaintiff alleges that Sheriff Mike Boudreaux is responsible for failing to properly train custodial staff and allowed this incident to occur.  However, other than this conclusory assertion, the complaint contains no facts to support the inference that the need for more or better training of the classification staff and/or control room officer was apparent "and the inadequacy was so obvious" that these supervisors can be considered deliberately indifferent to the need. Clement, 298 F.3d at 905. Indeed, there are no facts concerning the training or lack of training of the control booth officer and classification staff, or the supervisors' knowledge thereof.  Accordingly, Plaintiff fails to state a cognizable claim against Defendant Sheriff Boudreaux.

**D.      Retaliation**

A First Amendment retaliation claim has five elements. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009); Watison v. Carter, 668 F.3d 1108, 1114 (2012). First, the plaintiff must allege that he engaged in protected conduct, such as the filing of an inmate grievance. Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005). Second, the plaintiff must allege that the defendant took adverse action against the plaintiff. Id. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. Watison, 668 F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568-69 (internal quotation marks and emphasis omitted). Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

Plaintiff alleges that Defendant Nunez more than likely intentionally ignored safety protocols in retaliation for the argument they had.  However, Plaintiff's allegations are insufficient to give rise to a claim for retaliation.  There are simply no plausible allegations that Defendant Nunez opened Plaintiff's cell because they previously had an argument.  Accordingly, Plaintiff fails to state a cognizable retaliation claim.

**E.      State Law Claims**

Plaintiff also raises state tort claims of intentional and negligent infliction of emotional distress.   To state a state law claim, plaintiff must demonstrate compliance with the California

8

Government Claims Act. Cal. Gov't Code § 810, et seq. The Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950, 950.2 (2011). A plaintiff may file a written application for leave to file a late claim up to one year after the cause of action accrues. Cal. Gov't Code § 911.4.

Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. See State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1244 (2004). Thus, timely presentation of a claim under the Government Claims Act must be pled in the complaint. Id. at 1237, 1240; see also Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d. 1470, 1477 (9th Cir. 1995). The plaintiff must present facts demonstrating compliance, rather than simply conclusions suggesting as much. See Shirk v. Vista Unified School Dist., 42 Cal. 4th 201, 209 (2007), as modified (Oct. 10, 2007). Such requirements also apply to state law claims included in a federal action under § 1983. See Volis v. Housing Auth. of the City of L.A. Emps., 670 F. App'x 543, 544 (9th Cir. 2016). Plaintiff's state law claims fail because he does not plead compliance with the Government Claims Act. If plaintiff files an amended complaint, he shall include his state laws claims only if he can demonstrate compliance with the Government Claims Act.

In addition, although a federal court may exercise supplemental jurisdiction over state law claims, it may decline to do so over state law claims where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1998) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."). Thus, because Plaintiff has not stated a cognizable claim for relief under § 1983, the Court declines to exercise jurisdiction over Plaintiff's purported state law claims.

**V.**

9

**ORDER AND RECOMMENDATION**

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 13, 2026**

STANLEY A. BOONE
United States Magistrate Judge

10